## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**ALAN MARKWELL,**

      **Petitioner,**

                          **Case No. 2:14-cv-86**

    **v.**                         **Judge Sargus**

                                      **Magistrate Judge King**

**WARDEN, BELMONT
CORRECTIONAL INSTITUTION,**

      **Respondent.**

### REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the *Petition*, ECF No. 1, Respondent's *Return of Writ*, ECF No. 9, Petitioner's *Reply,* ECF No. 14, and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**Facts and Procedural History**

The Ohio Appellate Fifth District Court of Appeals summarized the facts and procedural history of the case as follows:

> On August 26, 2011, a jury found appellant Alan H. Markwell ["Markwell"] guilty of one count of rape and two counts of gross sexual imposition. On September 24, 2011, Markwell returned to court for sentencing. The trial court ordered that Markwell serve a mandatory prison sentence of ten (10) years on the rape count; a prison term of eighteen (18) months on the count of gross sexual imposition; and a prison term of five (5) years on the second count of gross sexual imposition. The sentences ordered for rape and the count of gross sexual imposition involving the same victim are to be served concurrent with one another, but consecutive to the sentence ordered for the gross sexual imposition count involving a different victim, for an aggregate prison term of fifteen (15) years. Markwell was also designated as a Tier III sexual offender.
>
> Facts and Procedural History

On April 25, 2011, C.T. a minor reported that she had been touched by her step-grandfather, Markwell. She told officers that Markwell had touched her on seven different occasions while she visited her grandmother between June 2008 and June 2010. C.T. reported that Markwell would come into the room where she and her sister were sleeping and push his fingers up inside her vagina. She also reported that Markwell also attempted to do the same thing to her sister, D.T., who would sleep through the incident.

Between April 23, and April 25, 2011, C.T. engaged in a texting conversation with Markwell in which she attempted to get him to admit this conduct. In one text, Markwell wrote that he loved her and that he was making love to her.

Upon investigation of these allegations, officers spoke to M. H., then eight (8) years old, who reported that approximately a year earlier, Markwell had touched her on her private area.

Markwell was interviewed by detectives and denied the allegations. In the defense case, Markwell testified and denied the allegations. He further testified that M.H., age 8, was sexually adventurous or promiscuous in that she would try to touch adults on their privates. He further testified about the great relationship that he had with all of his wife's grandchildren. In regards to the computer messaging, he testified that his wife's grandchildren had access to the computer during the time in question and blamed them for fabricating the conversations testified to by C.T. He also testified that C.T. had a motive to lie about the charges because he had threatened to tell her parents about a secret boyfriend of hers.

Assignments of Error

Markwell raises six assignments of error,

"I. THE CONVICTION IS BASED ON INSUFFICIENT EVIDENCE AND IS OTHERWISE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

"II. THE JURY INSTRUCTIONS WERE INSUFFICIENT IN VIOLATION OF OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

"III. THE TRIAL COURT ERRED IN JOINING OFFENSES IN VIOLATION OF OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

2

"IV. TRIAL COUNSEL WAS INEFFECTIVE IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

"V. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS STATEMENTS OBTAINED IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHTS IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS.

"VI. APPELLANT WAS DENIED DUE PROCESS BY STRUCTURAL CUMULATIVE ERROR IN VIOLATION OF OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS."

*State v. Markwell,* No. CT2011-0056, 2012 WL 2613903, at *1-2 (Ohio App. 5th Dist. July 2, 2012). On July 2, 2012, the appellate court affirmed the trial court's judgment. On November 7, 2012, the Ohio Supreme Court dismissed the appeal. *State v. Markwell*, 133 Ohio St.3d 1468 (Ohio 2012).

On January 23, 2014, Petitioner filed this action, alleging that the evidence is constitutionally insufficient to sustain his convictions (claim one); that the jury instructions failed to properly define each element of the charged offenses (claim two); and that he was denied the effective assistance of counsel because his attorney failed to move for a judgment of acquittal, failed to request a jury instruction on the meaning of "penetration," and failed to move for a severance of the charges. Respondent contends that Petitioner's claims are procedurally defaulted and without merit.

**Standard of Review**

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court"

and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ⸻ U.S. ⸻, ⸻, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Moreover, under the AEDPA, a writ of habeas corpus should be denied unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established federal law" as determined by the Supreme Court, or based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)). The United States Court of Appeals for the Sixth Circuit explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme]

4

> Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748-49. The burden of satisfying the standards of § 2254 rests with the petitioner. *Cullen v. Pinholster*, -- U.S. --, --, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011). "In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer,* 588 F.3d 328, 341 (6th Cir.2009) ("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" (quoting *Neal v. Puckett,* 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*)); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir.2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time that the state court rendered its decision. *Pinholster,* 131 S.Ct. at 1398. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 1399.

**Claim One**

In claim one, Petitioner alleges that the evidence is constitutionally insufficient to sustain his convictions. Specifically, he claims that there existed no evidence to establish that he was not the spouse of the alleged victims or that penetration occurred so as to establish the crime of rape.[1] *Petition*, ECF 1, PageID#5-6. The state appellate court considered this claim in relevant part as follows:

> Markwell challenges his convictions for rape and gross sexual imposition because he contends that the state failed to prove beyond a reasonable doubt that he was not married to the victims at the time of the offenses and further that the record contains insufficient proof that he penetrated the victim to support a conviction for rape. . . .
>
> Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.; see also McDaniel v. Brown*, ⸺ U.S. ⸺, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.
>
> \*\*\*
>
> In the case at bar, Markwell was found guilty of one count of rape. More particularly, R.C. 2907.02 states:
>
> (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>
> \* \* \*

---

[1] Petitioner was convicted on Counts 1, 9, and 19 of the *Indictment*, which charged him with rape and gross sexual imposition against alleged victim C.T., and gross sexual imposition against alleged victim M.H. ECF 9-1 PageID# 56-62; 165.

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

* * *

Markwell was also found guilty of two counts of gross sexual imposition in violation of R.C. 2907.05 which states:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

* * *

(5) The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age.

Markwell argues there is a complete absence of proof of non-marriage between him and the girls, an essential element of each charge.

In the present case, each victim testified that Markwell was her "step-grandpa." C.T. also indicated that she was sixteen (16) years old, lives with her parents and sister and brother, and attends the eleventh grade at Newark High School. Similarly, M.H. identified Charlotte Markwell as her grandma and Markwell as her "grandpa." M.H. also indicated that she was nine (9) years old, lives with her mommy and daddy, and attends the third grade at Adamsville Elementary School.

Markwell himself testified extensively concerning his family history and relationships including his first and second marriages.

7

During this testimony, he did not claim that he was married to either of his victims.

Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Markwell was not married to either C.T. or M.H.

Markwell next argues that there was insufficient proof of penetration.

In order to convict Markwell of rape, the state had to prove he engaged in sexual conduct with C.T. "Sexual conduct" is defined to include "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

In the case at bar, C.T. testified that the Markwell penetrated her vagina to the depth of a fingernail. "Corroboration of victim testimony in rape cases is not required." *State v. Johnson*, 112 Ohio St .3d 210, 217, 2006–Ohio-404 at ¶ 53, 858 N.E.2d 1144, 1158.

Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Markwell had committed the crime of rape. We hold, therefore, that the state met its burden of production regarding each element of the crime of rape and, accordingly, there was sufficient evidence to support Markwell's conviction.

\*\*

A fundamental premise of our criminal trial system is that 'the jury is the lie detector.' *United States v. Barnard*, 490 F.2d 907, 912 (9th Cir.1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who [is] presumed to be fitted for it by [his or her] natural intelligence and ... practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88, 11 S.Ct. 720, 724–725, 35 L.Ed. 371 (1891).

*United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266–1267 (1997).

Although Markwell cross-examined the witnesses and argued that his computer was hacked, that C.T. had threatened him if he told her parents about her secret boyfriend and that each child had been sexualized in their own homes, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990).

The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) citing *State v. Nivens*, 10th Dist. No. 95AP 09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, Franklin App. No. 02AP–604, 2003–Ohio–958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. No. 02AP–1238, 2003–Ohio–2889, citing *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist.1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra*.

In *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954), the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false. *See Rice v. City of Cleveland,* 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477–478.

> . . . The jury heard the witnesses, evaluated the evidence, and was
> convinced of appellant's guilt. . . .

*Markwell,* 2012 WL 2613903, at *2-5.

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 319. To determine whether the evidence was sufficient to support Petitioner's conviction, this Court must view the evidence in the light most favorable to the prosecution. *See Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson,* at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id*. (quoting *Jackson*, at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume - even if it does not appear on the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Id*. (quoting *Jackson,* at 326).

Under the AEDPA, a state court's determination regarding a sufficiency of evidence claim is entitled a "double layer" of deference. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference is due the jury's finding of guilt because the standard, announced in *Jackson v. Virginia,* is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Thus, even if *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *See also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle for a habeas petitioner to overcome. For the reasons detailed by the state appellate court, Petitioner has not done so here.

Petitioner argues that the state appellate court unreasonably found that evidence reflected penetration of the alleged victim as that term is defined under Ohio law, because the record does not show the manner in which Petitioner penetrated C.T. with his finger, and because, although C.T. stated that it was to the depth of a fingernail, the length of the victim's fingernail does not appear in the record. *Reply*, ECF 14, PageID# 835.

This argument fails. Ohio law requires only "*slight*" penetration to establish a rape. O.R.C. § 2907.01(A)(emphasis added). Thus, C.T.'s testimony, when viewed in the light most favorable to the prosecution, sufficiently established this conviction. Likewise, when viewing the evidence in the light most favorable to the prosecution, the evidence sufficiently reflects that Petitioner was not the spouse of either of the alleged victims, who were both minors, at the time of the alleged offenses.

Claim one is without merit.

**Procedural Default**

Respondent contends that Petitioner has procedurally defaulted claims two and three. In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state

courts, "there is a procedural default for purposes of federal habeas. . . ." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal claims asserted. That means that, if the claims are not presented to the state courts in the manner in which state law requires and, as a consequence, the state courts do not decide the merits of those claims, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case - that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim has been waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state

procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim.  *Id.*  Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error.  *Id.*  This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level.  *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.1985).

In order to establish cause for the procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must " 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.' " *Id*. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). In other words, a petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards,* at 450-51.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in

a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir.2013) (citing *Murray v. Carrier*, 477 U.S. at 495-96).

**Claim Two**

In his claim two, Petitioner alleges that he was denied a fair trial due to improper jury instructions on the issue of "penetration." He raised this claim in the Ohio Court of Appeals, which dismissed the claim as follows:

> In his second assignment of error, Markwell argues that the trial court failed to properly instruct the jury on the meaning of "penetration" required to sustain a conviction for rape.
>
> Crim.R. 30(A) governs instructions and states as follows:
>
> At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing.
>
> On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.
>
> In *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35(1999), the United State Supreme Court held that because the failure to properly instruct the jury is not in most instances structural error, the harmless-error rule of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 applies to a failure to properly instruct the jury, for it does not necessarily render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. Accordingly, an erroneous jury instruction that omits an element of the offense is subject to harmless-error analysis. *Id.* at 15, 119 S.Ct. at 1837.

On August 23, 2011, Markwell did file a written request for jury instructions in the case at bar. Of relevance, Markwell asked that the jury be instructed as follows, "Sexual Conduct means insertion however slight of any part of the body into the vaginal cavity of another." Thus, Markwell failed to request a more specific jury instruction defining "penetration."

The trial court instructed the jury in relevant part, "the insertion, however slight, of any part of the body or any instrument, apparatus or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." Thus, the trial court gave the jury the instruction that Markwell had requested at that time.

On appeal, Markwell contends that the trial court was required to define "penetration" as the spreading of the vaginal lips. *E.g., State v. Melendez*, 9th Dist. No. 08CA009477, 2009–Ohio–4425; *State v. Lucas,* 2nd Dist. No. 18644, 2001–Ohio–1350.

As noted in our disposition of Markwell's first assignment of error, under the circumstances of the case at bar, there is nothing in the record to show that the he was prejudiced by the failure to give the instruction that Markwell now claims the trial court should have given. C.T. testified and demonstrated for the jury that penetration did in fact occur:

Q. And I want to talk about the word penetration. Do you know what I mean when I say penetration?

[C.T.] Yes.

Q. And can you tell me what you think I mean?

A. Like pushing.

Q. Did you say pushed in?

A. Yes.

* * *

Q. Did you feel anything inside you?

A. Yes.

* * *

15

Q. Demonstrate what you felt.

A. It's like (Indicating) just like the tip of your nail.

Q. Your fingernail?

A. Yeah.

* * *

Q. Did you demonstrate with your fingernail it was inside?

A. Yes.

1T. at 126–127. Thus, C.H. testified that Markwell's finger penetrated her vaginal cavity. Accordingly, we find any error in the instructions to the jury was harmless beyond a reasonable doubt.

*Markwell*, 2012 WL 2613903, at *5-6.

Respondent argues that this claim is procedurally defaulted because the appellate court reviewed the claim for plain error only, which will not serve as a waiver of a procedural default. *Return of Writ*, ECF 9, PageID# 34-38.  This Court does not agree.  In observing that the trial court had given the instruction requested by Petitioner, the state appellate court did not indicate that it was limiting its review to plain error only.  This Court therefore concludes that the state courts did not enforce the procedural rule implicated by Petitioner's failure to object. The second part of the *Maupin* test has therefore not been met.

However, this Court also concludes that Petitioner's claim two is nevertheless without merit.

Errors in jury instructions are generally not cognizable in federal habeas corpus unless they deprive a petitioner of a fundamentally fair trial. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *see also Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *Thomas v. Arn,* 704 F.2d 865, 868-69 (6th Cir. 1983). A habeas petitioner who challenges the state trial court's jury

instructions must establish that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). An omission or an incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson,* 431 U.S. at 155.  For the reasons discussed by the state appellate court, such are not the circumstances here.

The trial court gave essentially the same jury instruction that Petitioner had requested, and the evidence adduced at trial in that regard reflected "penetration" as that term is defined under Ohio law.  In light of this evidence, the trial court was not required to instruct the jury that the term "penetration" required evidence of the spreading of the vaginal lips before the jury could convict Petitioner on the charge of rape.  Under these circumstances, Petitioner has failed to meet his burden of establishing that the state appellate court's decision rejecting this claim is unreasonable so as to merit federal habeas corpus relief.  *See* 28 U.S.C. § 2254(d), (e).

Claim two is without merit.

**Claim Three**

Respondent correctly notes that Petitioner did not presents, in the Ohio Supreme Court, claims based on his attorney's failure to move for a judgment of acquittal or for severance of the charges.  These claims are therefore procedurally defaulted.  *See Return of* Writ, ECF 9, PageID# 38-39; see ECF 9-1, PageID# 257.  Ohio requires that claims be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*. Petitioner is now foreclosed from raising these claims in the Ohio courts by operation of Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d (1982); *State v. Ishmail*, 67 Ohio St.2d 16, 423 N.E.2d 1068 (1981); *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967).  The state courts were never given an

opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

The Court finds that Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin t*est. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732–33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427-29 (6th Cir.2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112, 443 N.E.2d 169; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. Accordingly, this Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner may still obtain review of the merits of his claim three if he establishes cause for his procedural default, as well as actual prejudice from the alleged constitutional violations.

> " '[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule."
> *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003).  The constitutionally ineffective assistance of counsel may constitute cause for a procedural default.  However, "[i]neffective assistance of counsel may constitute cause for a procedural default only at a stage of the proceedings where a petitioner has a Sixth Amendment right to counsel. . . . It does not extend to discretionary appeals or collateral post-conviction proceedings."  *Wilson v. Hurley*, 382 F.Appx. 471, 478 (6th Cir. 2010).  Petitioner has no Sixth Amendment right to counsel in connection with the discretionary appeal to the Ohio Supreme Court. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."). He has therefore failed to establish cause for his procedural default of his claim three.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333.  Such are not the circumstances here.

Petitioner has waived claims based on his allegations that his attorney performed in a constitutionally ineffective manner by failing to move for a judgment of acquittal or severance of the charges.

Petitioner also alleges in claim three that he was denied the effective assistance of counsel because his attorney failed to request appropriate jury instructions.  The state appellate court rejected this claim as follows:

> Markwell claims that his trial counsel was ineffective for . . . failing to request a specific jury instruction on the meaning of "penetration" as it refers to a rape charge[.]
>
> A claim of ineffective assistance of counsel involves a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).
>
> In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).
>
> To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S .Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland,* 466 U.S. at 688, 104 S .Ct.2052 at 2065.
>
> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make

the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland,* 466 U.S. 668 at 689,104 S.Ct. at 2064.

In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland,* 466 U.S. 668 at 689,104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. 668 at 689,104 S.Ct. at 2064.

An appellant must further demonstrate that he suffered prejudice from his counsel's performance. *See Strickland*, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To prevail on his ineffective-assistance claim, appellant must show, therefore, that there is a "reasonable probability" that the trier of fact would not have found him guilty.

None of the instances raised by Markwell rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record that Markwell cites in support of his claim that he was denied effective assistance of counsel, we find Markwell was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel.

Because we have found no instances of error in this case, we find Markwell has not demonstrated that he was prejudiced by trial counsel's performance.

*Markwell*, 2012 WL 2613903, at *9-10.

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* 466 U.S. at 687; *see also Blackburn v. Foltz,* 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.,* at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland*, 466 U.S. at 697.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles,* 556 U.S., at --, 129 S.Ct. 1411, 173 L.Ed.2d 251. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at --, 129

22

> S.Ct. 1411, 173 L.Ed.2d 251. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter,* 562 U.S. at 105.

As previously discussed, the record fails to reflect that the evidence required an additional jury instruction on the definition of "penetration" or that Petitioner was prejudiced by the failure to give an additional instruction in that regard.  Petitioner has failed to establish that the state appellate court's denial of his claim of ineffective assistance of counsel under the test set forth in *Strickland* warrants relief.

In short, claim three is procedurally defaulted and lacks merit.

It is therefore **RECOMMENDED** that this action be **DISMISSED**.

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of

the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

  *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge

July 2, 2015